cases 22-5142 the United States of America v. Marcus Bennett and case number 22-5162 United States of America v. Eric Bennett. All arguments to be 10 minutes for each defendant 20 minutes for plaintiff. Mr. Spencer Shields Cohen for the Marcus Bennett. Good morning. Good morning Your Honor. Spencer Cowen for Marcus Bennett. Might refer to him as Marcus just to avoid confusion with his brother. I'd like to reserve three minutes for rebuttal. May it please the court. Marcus Bennett raised three issues on appeal. Two that warrant a new trial and one that warrants a new sentence and I want to turn to the Confrontation Clause issue. Marcus was convicted on a single count of conspiracy to distribute heroin. The government's key witness on that count was a confidential informant and convicted felon named Quanta Malone. Very early on at trial the government introduced testimony from Malone that implicated Marcus in drug dealing activity. The very same activity that he was convicted of at trial. Twice a law enforcement officer named Inspector Mehal told the jury about his meetings with Malone. Inspector Mehal told the jury that Malone told him he could buy heroin from Marcus Bennett. And that testimony. Was there an objection to that statement? There was an initial motion to exclude. The motion to exclude was about the recordings was it not? It was about the recordings and then there was supplemental briefing after oral argument on motion to exclude that made clear they were objecting to statements from Quanta Malone. And then at trial Eric objected to testimony from Quanta Malone. All testimony from Quanta Malone and Marcus joined. But was it specific as to these two statements? I don't think it was. Well there was the again there was the initial motion to exclude. But the initial motion to exclude really focused on the recordings did it not? It was focused on the recordings but there was additional briefing that suggested that any state. Suggested? I mean you have to do to preserve an issue you have to do more than suggest I think. Well your honor just to your point the government has not argued that we've waived this particular argument. I thought they argued we had a review for plain error. The government has argued that the standard of review here is to have for arguments that were preserved. Confrontation clause arguments that were preserved. Okay so you're saying that these two statements the government admits were preserved? The record confirms that we moved to exclude these statements. Well I question whether that's true or not. It doesn't look to me like you did but we would still review for plain error anyway. In any case your honor there is no question these statements violated the confrontation clause. Okay aren't they kind of innocuous? I mean you look at all the evidence that you have in this case and the two statements that Malone said I think I could probably get him to sell me some drugs. All right and I think I think maybe I could do this. I mean of all the the evidence of guilt here his speculation that I think I could have done this I mean does it doesn't make any difference? So two points your honor the first is that Cromer is a perfect example of harmful confrontation clause testimony and in Cromer the law enforcement officer was testifying about background information about a house that was suspected of being associated with illegal activities and then the law enforcement officer said there is a man that I was associated with a house named Nutt and so there wasn't a clear kind of connection between illegal activities in this individual but nonetheless the court held that that violated the confrontation clause. Here there's a very clear statement from Quantum Malone that's implicating Bennett in drug dealing activities and so we think that that's a far clearer example of a confrontation clause violation than Cromer. The second point is it seems like you're making a harmless error argument and our briefing points out the government did not argue harmless error. The government has the burden to show with certainty that any errors at trial did not affect Marcus's substantive rights. The government has not even If we review it on a plain error it's your burden, right? I'm not sure I'm not sure the interplay there your honor. The government would still have to argue that any error even even a plain error I think would be harmless and the government has not made that argument. I do want to turn to the to the sentencing issue if that's okay. The trial court erroneously applied a two-level enhancement to Marcus's sentence for maintaining a drug house. There is no evidence that Marcus maintained. Well there's circumstantial evidence is there not? Well your honor Marcus challenged the drug house enhancement in the PSR and so the court had to make factual findings on the record and the court summarized all the evidence that it thought related to the drug house enhancement. The court acknowledged that Marcus didn't own Gilligan Street, didn't have a possessory interest. He doesn't have to does he? Well your honor the government the court cited the two facts that it thought warranted the enhancement and those two facts were that Marcus controlled access to Gilligan Street and that the drugs that were recovered there belonged to Marcus. And he went back and forth didn't he? Didn't he go back and forth of the house? He had a relationship with with Julia Young but your honor the point that I'm... Did he go back and forth of the house? I thought he did. He did. And the drugs are stored in the house and he's going back and forth making the drug dealing deals. Going back to the house, the drugs are found at the house. The sentencing enhancement the district court only has to find by a preponderance of evidence right? Your honor... And that's that's kind of a low bar. The district court identified two facts that it thought warranted the enhancement. One, that Marcus controlled access to Gilligan Street. Two, that the heroin that was recovered there was Marcus's. The government offered testimony at sentencing from Julia Young. It recollected testimony that occurred ten months earlier and in fact that testimony never occurred. So the government has since conceded on appeal. Julia Young never testified to the two facts that the government relied on when it applied the two-level enhancement. And so those two facts just are not in existence and it's clearly... We're not entitled to consider other facts even though they're not mentioned by the district court in the sentencing order? Your honor, I think under under criminal rule 32, the government, excuse me, the court has to make factual findings on the record if a sentencing enhancement is challenged. And so you go to the transcript and you look at the factual findings that the court made and the two facts that the court found do not exist. And the government is arguing for an extra textual interpretation of the rule, of the sentencing rule or enhancement that would apply whenever drugs are recovered from a premises or perhaps even possessed in a premises. That conflicts with the enhancement, it conflicts with the advisory committee's notes, and it conflicts with this court's precedent on the drug house enhancement. So we'd ask that at minimum you vacate his sentence without the drug house enhancement. Okay, any further questions at this time? Good morning. Good morning, your honors. Christy Love on behalf of Eric Bennett. I am reserving three minutes for rebuttal. Very well. May it please the court. Appellant Eric Bennett is requesting reversal on three issues. My focus today is the argument on the 851 and also regarding the sentencing drug calculation. First, regarding the 851 issue, this court has held multiple times that the requirements listed in 21 U.S.C. 851 are mandatory and a district court cannot enhance a defendant's sentence based on a prior conviction unless those requirements are satisfied. The government filed an 851 notice in May 2018 and they listed four felonies and they designated it obviously as the felony drug offenses. However, the First Step Act became enacted and effective in December 2018 and this required the government to prove that those prior convictions were serious drug felonies, that the defendant had served more than months on those offenses, and also that he had served, he was released or that the crime occurred within 15 years of the instant offense. The government did not amend or supplement their notice that was filed pre-First Step Act. Was there any objection to that? No, there wasn't, your honor. So it's plain error review? It would appear to be plain error review. I know at sentencing the trial attorney sort of raised the issue, not the most articulately, but so I'd like to have, you know, a lesser burden, but I believe that plain error is probably appropriate. At the same time, it's a little sloppy on the government's part to not amend this clearly deficient filing, but one of the crimes still, even under the heightened standards under the First Step Act, one of the crimes still qualified. And I'm looking at the PSR, one would think that. However, I would hold the government to their burden of showing the facts that the defendant had served more than 12 months and that the offense was within 15 years. And I just don't believe that a PSR is enough to hold the government to their burden of showing that. I believe they could have amended the PSR, they could have filed a judgment to show this, they could have shown the prison records to show that he had served more than 12 months. They could have if you had objected to the PSR, but you didn't or your counsel below didn't. I believe they could have done that even in... I know they could have done it, but... And they should have. Right, and if there had been an objection to the PSR, I think they probably would have, that's all. So Eric Bennett proceeded to trial in 2021 and he was ultimately convicted of a lesser kilogram of heroin and he was also convicted of violating 18 U.S.C. 924C and 18 U.S.C. 922G. Moving on from the... No, and at sentencing, his trial attorney raised the alarm about how he should be facing 5 to 40 on count one. I just provided that for information, but obviously this court knows the record. No, no, I was, I didn't, I just want to make sure I was following the argument. Is your argument tied at all to the First Step Act? Suppose the First Step Act had not come into existence. The government, is your point the same, which is there's some, there's some specifications the government has to show that make, to make these qualifying offenses and they didn't do it? Whether it's, you know, the years or amounts that changed because of the First Step Act? They did not amend, they did not amend the notice and the notice, one, put that there were felony drug offenses, not serious, a serious drug felony, but then also they did not provide the facts that were established by statute in the First Step Act, which was the 12 months and the 15 years. And then also my argument is that the court, once the notice is filed and after conviction, the court was required to inquire of Mr. Bennett whether he indeed had a qualifying predicate and that never happened. It didn't happen on the, for the felony drug offense, nor did it happen for the serious drug felony. So the district court filled in its duty of doing the inquiry and then also informing the defendant that, you know, he could, he could challenge it if need be. So it's my argument that if this court uses the plain error standard, the error is clear and obvious and it affected Mr. Bennett's substantial rights. It affected the fairness and integrity and public reputation of his judicial proceedings and I argue that the government and district courts non-compliance with these statutory requirements should not be deemed harmless by this court and I request a re-sentencing and that he be sentenced without the statutory enhancement. And moving on to the drug calculation, I argue that Mr. Bennett should not be held responsible for the heroin that was sold while he was incarcerated. It was sold by his brother and also for the heroin found at Julia Young's residence. So the correct drug calculation should be 267, 267.84 grams and the correct guideline base offense level should be a 24 instead of a 28. So this would have made his range between 160 months to 185 months when you add the 924C calculation. I argue that the included drugs regarding when he was incarcerated and also at Julia Young's residence is not relevant conduct and part of it is one, Julia Young testified. She testified on behalf of the government. She never tied Eric Bennett to her residence. Also they had a cell, a GPS tracker on his phone. They did not introduce evidence that he was at that residence. They were also doing a wiretapping on Bennett's phone and there's no evidence even on Marcus Bennett's phone tying Eric Bennett to that residence or tying him to the additional drug sales while he was in jail. Also there was a poll camera on that residence and there was no evidence tying Eric Bennett to that residence. So I argue that it should not be included as relevant conduct. It's a result of being pled as a conspiracy and so you're on the hook for acts of others. Only if it's foreseeable to the defendant and part of the defendant's agreement, a jointly undertaken agreement and I argue that it's not. So I have six seconds left and so if there are any questions. Any further questions? No. Thank you, Your Honor. It's been an honor. You still have three minutes rebuttal though. Yes, I do. Let's hear from the government. Good morning. Good morning, Your Honor. May it please the Court. My name is Assistant U.S. Attorney Jay Gilbert and I would like to talk a little bit about the argument that is made about the Confrontation Clause. As I mentioned in the brief for the United States, this testimony by quantum alone was not testimonial. It was contextual and so the Confrontation Clause doesn't bar the use of testimonial statements for purposes other than establishing the truth of the matter asserted. I think there's maybe a distinction between you seem to be talking about the ruling that pertains to the recording being contextual. Are you also saying that the testimony that the agent gave on the stand regarding what quantum alone had said was contextual? Your Honor, the motion to which I believe you're referring refers to admission of recordings. Right. I don't know that that's really at issue in our appeal. Is it the recordings? It's really the testimony that the agent gave regarding what Malone told him that was going to be accomplished. I think that's what's at issue, isn't it? Well, that was touched on in the trial, Your Honor. It was touched on in the briefing too, wasn't it? It was touched on in the appellate briefing but by your friends on the other side. But there was no objection at trial. Right, there's no, I don't think there was an objection at trial to that testimony but I think that's the testimony that's at issue on the appeal, not those recordings. I may be mistaken but I don't see that in the briefing. Really, the recordings are the issue. Well, it is mentioned, Your Honor, that the recordings were the issue. I know they were the issue below but they don't seem to be the issue on appeal. It seems to be the issue on appeal is what was said on the stand by the postal inspector. Maybe I'm misunderstanding. I also think Judge Bush is right about this and this is how your friend on the other side argued it this way, right? He was concerned about these two statements by the officer about the fact that there was buys going on. Yes, Your Honor. Yeah, I don't think, you didn't really brief it. You didn't really brief the issue. No, Your Honor, because frankly I was focusing on the recordings which were the... I think he won that, it seems like, and they haven't appealed it on the recordings. I don't see that as an issue on appeal. All right, Your Honor. Do you agree? Well, Your Honor, I do agree. Okay, all right, let's move on to the statements. There's no contemporaneous objection to these statements at trial. They say there's kind of a general objection ahead of time to the admission of any statements by the confidential informant. What do you say to that? Have they preserved this objection or not? They have not, Your Honor. Okay. An objection simply to, I object to everything this person says is not specific enough to preserve. It's kind of what I think too, so, and there should have been a contemporaneous objection since you don't know the form of the question exactly. Anyway, all right, so you say it's not preserved, so we review for plain error? Yes, Your Honor. Okay, and your argument is there's no plain error here? That, that's correct, Your Honor. Okay. No plain error. All right, sorry, was there still a question standing? No error, no legal error, or no, any error was harmless, or both? Well, both, Your Honor. Frankly, there was no error at all, and certainly no plain error. The statements to, statements to officers are, are you arguing that, are you arguing that they were not hearsay, or are you arguing that they weren't testimonial? Yes and yes. They weren't hearsay, nor were they testimonial. I mean, sometimes statements to officers are considered testimonial, or maybe that's the presumption, that's usually the case. Yes, Your Honor, not so here. Quantum alone, basically, was just setting the, the context for what was happening here, explaining how the investigation even got started, and then, of course, he had these recorded discussions, interactions with each of the Bennett's, and so Officer Mehal discussed those in, in depth during trial. Is that answering your question, Your Honor? Yeah, maybe not convincingly, but how about, how about on harmless error? I mean, there are a lot of, there are a lot of, there's a lot of evidence, right, regarding the number of controlled buys, and the details associated with those purchases? Yes, Your Honor, the trial transcript shows just how voluminous the evidence was. Inspector Mehal was on the stand talking about this for, I think, the better part of the day, and so the evidence about the allegations, the charges of the indictment, the evidence was, in fact, overwhelming, and so it was harmless. Any error was harmless, because there were so many other pieces of evidence that could have substantiated the charges, that one way or the other, he was, he was going to be found guilty. And so I asked your friend on the other side, they don't object below, but you don't really raise the issue in your brief, so does, does one of those failures trump the other? Under plain, under plain error review, we would probably require the defendant to show why the error is harmless. If it was a, if it was a preserved issue, we'd probably require the government to make that showing, but you didn't really argue the issue in your briefs. I'm not sure how to reconcile, reconcile all of that. Yes, Your Honor. The issue was not preserved for appeal, and so that the standard of review should be plain error. Regardless whether the government briefs the issue. Yes, Your Honor. Anything else? No, Your Honor. Any other questions about the context or? Judge Ravel? I guess not. Thank you, Mr. Gilbert, for your argument. Thank you, sir. All right, rebuttal. Mr. Cohen? I do want to try and clear something up. So in the ordinary course, if a confrontation clause argument is not objected to, then that's rebuke for plain error. I think the problem here is that the parties are speaking past themselves. So we presented a confrontation clause argument, and the government never responded to that argument, never argued that the court should review for plain error. And so it's essentially two ships passing in the night, where the government hasn't even responded to our confrontation clause argument. And we think that under the three precedent that we cited, Cromer, Power, and Savores, there's a clear confrontation clause violation. I do just want to underscore, if I wasn't clear enough, on the drug house enhancement. That there is no evidence that the court cited to support that enhancement. The two facts, the two specific facts that it cited, came from the government's recollection of testimony that occurred ten months earlier. And the government seems to want this court to adopt an extra-textual reading of the enhancement, so that any time drugs are perhaps even possessed in a house, the two-level enhancement necessarily applies. The government cited a 28-J letter, United States v. Taylor, and we think that case is basically an opposite. And Taylor, the defendant, came to a homeowner and threatened her and said, store my drugs. And the homeowner testified at sentencing that she felt, quote, in danger. And the trial court analogized this to, it used the word blackmail. And so the defendant there was exercising de facto control of the house through these threats of violence. And this court held that that was an exercise of control that warranted the enhancement. There's no evidence in the record that Bennett threatened Julia Young. There's no evidence that he even had access to Gilligan Street unless... But there is evidence that there were drugs at the residence, and Young testified she didn't know that they were there. And we do know that he was also her boyfriend and had access to the residence. So why isn't that enough for the district court to find that he had control of the residence? Sure, Your Honor. So the government, again, recollected at sentencing that Julia Young testified that the heroin was Marcus's. That testimony didn't occur. So Ms. Young never testified that the drugs were Marcus's. But she did testify that she didn't know where the drugs were from. She didn't know the drugs were there, but they were there. Sure. But then I still think you go back to the text of the enhancement and the word maintain. You had to have some evidence that there's either a possessory interest or if there's no possessory... So there's no evidence that anyone other than Young and Bennett had access to the residence, right? Sure. Then you would go to perhaps de facto control. And for de facto control, this court's precedent said that the primary purpose of the residence has to be for the manufacturing and distributing of heroin. So not just an incidental purpose, such as Ms. Young lives there and there happens to be some drugs in the house, but the primary purpose. So for example, a warehouse that's a distribution center, that would warrant the enhancement. But there's no evidence that the primary purpose of Gilligan Street was to manufacture or distribute drugs. How much in drugs were found there? 400 grams. Okay, that's quite a bit. My understanding is yes, softball size. Okay, all right, thank you. Thank you. Hello, Your Honors. I would like to just note that in my brief I did address the recordings or the controlled buys, at least one of them. It's the ECF page 27. And I didn't go into a lot of detail, but I did reference that Quantum Malone had driven to Walgreens on the corner of Newcutt and Palatka, and Inspector Mehal was in another vehicle in the surrounding area. And it's at the bottom of the page. And he was not personally on the cell during that drug sale, but he did testify, I'm moving to page 28, he did and reflected the transaction between Eric Bennett and Quantum Malone. And I argued he could not have known this because he was not present at the actual transaction. Only Quantum Malone would have known that the recording fairly and accurately depicted the event, and only he could have explained the nuances of the drug sale. So I did raise, you know, at least one recording issue as it pertained to Appellant Eric Bennett. Thank you very much. Thank you. Alright, I'd like to thank both attorneys for accepting assignments of this case under the Criminal Justice Act. You've both done an admirable job for your clients, so thank you for your service to the court and service to yourself. The case will be submitted. May call the next case.